PEOPLE v WILLIAMS

Docket No. 202176. Submitted September 7, 1999, at Detroit. Decided
March 24, 2000, at 9:10 A.M. Leave to appeal sought.

Charles E. Williams, also known as E. Charles Williams, was con-
victed by a jury in the Oakland Circuit Court, Meyer Warshawsky,
J., of conspiracy to possess with intent to deliver more than 650
grams of cocaine and possession with intent to deliver 650 or more
grams of cocaine. The defendant was sentenced as a fourth-offense
habitual offender to life without parole for each conviction. The
defendant appealed, alleging error in the admission of evidence and
the failure to suppress evidence. He also alleged that the conspir-
acy conviction must be set aside because his codefendant was con-
victed of conspiracy to possess with intent to deliver more than
225 but less than 650 grams of cocaine.

The Court of Appeals *held*:

1. Although a statement in the affidavit in support of the search
warrant was false, suppression of the evidence was not required
because the false material was not necessary to establish probable
cause and the remainder of the affidavit supports a finding of prob-
able cause.

2. Although drug profile evidence was improperly admitted, the
error was harmless because it does not affirmatively appear that it
is more probable than not that the impermissible drug profile evi-
dence was outcome determinative with regard to either charge.

3. Evidence regarding similar unlawful acts was properly admit-
ted. The evidence was directly relevant to intent, knowledge, and
scheme, all of which were at issue in the case. The evidence was
not overly prejudicial, considering all the evidence legitimately
presented.

4. To the extent that the defendant's conviction of conspiracy to
possess with intent to deliver more than 650 grams of cocaine
includes a finding that the defendant conspired to possess with
intent to deliver up to 650 grams of cocaine, it is not inconsistent
with the verdict finding the codefendant guilty of conspiracy to
possess with intent to deliver more than 225 but less than 650
grams of cocaine and does not violate the "no one-man conspiracy"
rule. In addition, the defendant's conspiracy conviction need not be

set aside, because the felony information charged that the defendant and the codefendant conspired together and with others and the evidence supported the finding that the defendant had conspired with others to possess with intent to deliver more than 650 grams of cocaine.

5. The defendant failed to establish his claim of ineffective assistance of counsel.

Affirmed.

1. SEARCHES AND SEIZURES — FALSE INFORMATION IN AFFIDAVITS — PROBABLE CAUSE.

Evidence obtained pursuant to a search warrant procured with an affidavit containing false information must be suppressed where the defendant shows by a preponderance of the evidence that the affiant had knowingly and intentionally, or with reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to establish probable cause.

2. CONTROLLED SUBSTANCES — EVIDENCE — PROFILES OF DRUG DEALERS.

There are four factors applicable to a determination whether to admit drug profile evidence: first, the evidence must be offered as background or modus operandi evidence, not as substantive evidence of guilt, and the distinction must be carefully maintained; second, something more than drug profile evidence must be admitted to prove the defendant's guilt; third, the court must make clear to the jury that the drug profile evidence is properly used as only background or modus operandi evidence, not substantive evidence; and fourth, expert witnesses may not express an opinion that, on the basis of the profile, the defendant is guilty or compare the defendant's characteristics to the profile in a way that implies that the defendant is guilty; a harmless-error analysis is employed to consider the effect of improperly admitted drug profile evidence; the test is whether, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative.

3. CONSPIRACY — EVIDENCE — INCONSISTENT VERDICTS — UNNAMED CONSPIRATORS.

Michigan follows the "no one-man conspiracy" rule, which provides that if two defendants are tried together for a conspiracy in which no additional persons are implicated, a verdict finding one defendant guilty and the other not guilty requires a judgment of acquittal of both; a defendant's conviction of conspiracy may stand, despite the acquittal of other named alleged coconspirators, where the indictment, in addition to referring to the defendant and the named alleged coconspirators, refers to unknown or unnamed conspira-

tors and there is sufficient evidence to show the existence of a conspiracy between the convicted defendant and those other conspirators (MCL 750.157a; MSA 28.354[1]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Daniel L. Lemisch*, Chief, Appellate Division, and *Janice A. Kabodian*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan M. Meinberg*), for the defendant on appeal.

Before: WHITE, P.J., and HOOD and JANSEN, JJ.

PER CURIAM. Defendant appeals as of right from his jury trial convictions of conspiracy to possess with intent to deliver more than 650 grams of cocaine, MCL 750.157a; MSA 28.354(1), MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i), and possession with intent to deliver 650 or more grams of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12; MSA 28.1084, to life without parole for each of his convictions. We affirm.

Defendant was tried with a codefendant, Ronald Gentry. Gentry is not a party to this appeal. From September 8, 1995, until his arrest, law enforcement agencies had been investigating defendant's activities and had made seven controlled purchases of cocaine and heroin. Defendant was arrested on October 13, 1995, when search warrants were executed at defendant's and the codefendant's houses. Defendant was arrested outside the codefendant's house. Inside that house, the police found a safe containing approximately 629 grams of cocaine. Defendant had a key to the safe. In searching defendant's house, the police

found several persons, over one hundred grams of cocaine, and items associated with preparing the cocaine for distribution.

I

Defendant first claims that the trial court erred in failing to suppress evidence because the issuance of the search warrant was based on false information. We disagree. We review for clear error a trial court's findings of fact regarding a motion to suppress evidence. *People v Echavarria*, 233 Mich App 356, 366; 592 NW2d 737 (1999). However, we review de novo the trial court's ultimate decision regarding a motion to suppress. *Id.*

Defendant contends that the following statement contained in the affidavit in support of the search warrant was false:

> Affiant has been furnished information from a confidential informant of established reliability, that Cocaine is being stored on a daily basis at 566 Pearsall, in the City of Pontiac.

The record supports defendant's assertion. However, suppression is not required. In *People v Melotik*, 221 Mich App 190, 200; 561 NW2d 453 (1997), this Court explained:

> "[I]f false statements are made in an affidavit in support of a search warrant, evidence obtained pursuant to the warrant must be suppressed *if the false information was necessary to a finding of probable cause.* In order to prevail on a motion to suppress the evidence obtained pursuant to a search warrant procured with alleged false information, the defendant must show by a preponderance of the evidence that the affiant had knowingly and intentionally, or with

reckless disregard for the truth, inserted false material into the affidavit *and that the false material was necessary to a finding of probable cause.*" [*Id.*, quoting *People v Stumpf,* 196 Mich App 218, 224; 492 NW2d 795 (1992), citing *Franks v Delaware,* 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978) (emphasis in original).]

Here, defendant has not shown that the false material was necessary to establish probable cause. A review of the remainder of the affidavit demonstrates that it contained sufficient information to support a finding of probable cause. Therefore, the trial court did not err in failing to suppress the evidence.

II

Defendant's next claim of error is that he was denied a fair trial by the prosecutor's use of drug profile evidence. We review for an abuse of discretion a trial court's decision to admit evidence. *People v Hendrickson,* 459 Mich 229, 235; 586 NW2d 906 (1998). An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made. *Id.*

In *People v Murray,* 234 Mich App 46; 593 NW2d 690 (1999), this Court listed four factors to apply when considering whether drug profile evidence should be admitted. First, the drug profile evidence must be offered as background or modus operandi evidence, and not as substantive evidence of guilt, and the distinction must be carefully maintained by the attorneys and the court. Second, something more than drug profile evidence must be admitted to prove a defendant's guilt; multiple pieces of profile do not add up to guilt without something more. Third, the

trial court must make clear to the jury what is and is not an appropriate use of the drug profile evidence by, e.g., instructing the jury that drug profile evidence is properly used only as background or modus operandi evidence and should not be used as substantive evidence of guilt. Fourth, the expert witness should not be permitted to express an opinion that, on the basis of the profile, the defendant is guilty, and should not expressly compare the defendant's characteristics to the profile in a way that implies that the defendant is guilty. *Id.* at 56-57.

Applying *Murray*, we conclude that to the extent the police witnesses were permitted to express the opinion or state the belief or conclusion that defendant used codefendant Gentry's house on Pearsall as a safe house, the testimony was admitted in error.

However, this Court employs a harmless-error analysis when considering the effect of improperly admitted drug profile evidence. *Id.* at 64. When assessing a defendant's nonconstitutional allegation of error, the test is whether " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999), quoting MCL 769.26; MSA 28.1096. Here, there was evidence that defendant had a key to a safe containing 629 grams of cocaine, located at the Pearsall address; evidence of controlled buys in which defendant would go to the Pearsall address upon receiving an order for drugs and then deliver the drugs to the buyer; evidence that crack cocaine was being manufactured at defendant's house; and testimony that codefendant Gentry's fingerprint was recovered from a bag found at defendant's house,

apparently containing cocaine residue. Taking this testimony together with the permissible drug profile evidence concerning background, but excluding the impermissible opinions, conclusions, and comparisons, we conclude that upon an examination of the entire record, it does not affirmatively appear that it is more probable than not that the impermissible drug profile evidence was outcome determinative, either of the underlying possession charge or the conspiracy charge.

III

Defendant next claims that the trial court erroneously admitted prejudicial evidence of similar acts, in violation of MRE 404(b), when it admitted audio and video tapes of the controlled buys conducted during the investigation that led to the warrants and arrests, showing defendant engaging in drug transactions. We disagree. We review the admission of such evidence for abuse of discretion. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998).

MRE 404(b)(1) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Evidence of other crimes, wrongs, or acts is admissible under MRE 404(b)(1)   if the evidence is "(1)

offered for a proper purpose and not to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice, MRE 403." *People v Ho*, 231 Mich App 178, 185-186; 585 NW2d 357 (1998), citing *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

The prosecutor offered the tapes into evidence "to establish the Defendant's knowledge, intent, and identity." Defendant argued that *Crawford* controlled and that the evidence was inadmissible. In *Crawford*, the Supreme Court found the prosecution's introduction of detailed testimony regarding the defendant's delivery of cocaine in 1988, four years before the charged offense, to be error requiring reversal. The Supreme Court recognized that the defendant's intent and knowledge were at issue in the case and were permissible purposes for introducing evidence under MRE 404(b)(1). However, the Court concluded that the evidence was not probative of the defendant's knowledge and intent with respect to the charged offense because

> the factual relationship between the 1988 crime and the charged offense was simply too remote for the jury to draw a permissible intermediate inference of the defendant's mens rea in the present case. [*Crawford, supra* at 396].

The Court further explained, *id.* at 396-397:

> The prior conviction only demonstrates that the defendant has been around drugs in the past and, thus, is the kind of person who would knowingly possess and intend to deliver large amounts of cocaine. To the extent that the 1988 conviction is logically relevant to show that the

defendant was also a drug dealer in 1992, we believe it does so solely by way of the forbidden intermediate inference of bad character that is specifically prohibited by MRE 404(b).

Guided by the Court's analysis in *Crawford*, we conclude that the facts of the instant case compel a different result.

Defendant objects to evidence of a series of transactions within five weeks immediately before his arrest The transactions involved the observation of defendant's prompt departure from his house upon receiving an order for drugs, his prompt arrival at and entry into the codefendant's house, and then his prompt departure from the codefendant's house and delivery of the drugs. Thus, the evidence was directly relevant to intent, knowledge, and scheme, all of which were at issue in the case. The relevance was direct, in that there was a direct relationship between the prior sales and the crimes charged, and did not involve an impermissible intermediate inference to character. Nor was exclusion compelled under MRE 403. The evidence was not overly prejudicial, considering all the evidence legitimately presented. See *United States v Myers*, 123 F3d 350 (CA 6, 1997).

IV

Defendant next argues that his conviction of conspiracy to possess with intent to deliver over 650 grams of cocaine must be set aside under the "no one-man conspiracy" rule because coconspirator Gentry was found guilty of conspiring to possess with intent to deliver more than 225 but *less than* 650 grams of cocaine. Under the circumstances presented here, we disagree.

The Supreme Court stated in *People v Anderson*, 418 Mich 31, 35-36; 340 NW2d 634 (1983):

> There can be no question that Michigan is a "no one-man conspiracy" state. Our conspiracy statute [MCL 750.157a; MSA 28.354(1)] is a bilateral conspiracy statute which requires proof of an agreement between two or more persons. . . .
>
> \*     \*     \*
>
> Since the statute requires proof of an agreement of at least two persons, the common-law "no one-man conspiracy" rule is applicable. That rule provides that "if two are tried together for a conspiracy *in which no additional persons are implicated,* a verdict finding one guilty and the other not guilty requires a judgment of acquittal of both." See Perkins, Criminal Law (2d ed), p 622. The purpose of the rule at the common law was to prevent the enforcement of inherently defective or inconsistent verdicts in conspiracy cases. Such inconsistency resulted when, in the joint prosecution of several alleged conspirators, one co-conspirator was convicted while all of his alleged co-conspirators were acquitted. The effect analytically was that the factfinder in such cases found simultaneously that "an agreement between two or more persons" existed and that it did not exist with regard to the same alleged conspirators. At common law the rule was easily applied since co-conspirators were always tried jointly and a per se rule fulfilled the rationale underlying the common-law "no one-man conspiracy" rule, precluding inherently defective or inconsistent verdicts. [Emphasis added.]

15A CJS, Conspiracy, § 37, p 730, states in pertinent part:

> To constitute a conspiracy there must be a combination of two or more persons; one person cannot conspire with himself; but a single person may be guilty of conspiracy although the person with whom he is charged with conspiracy died before the indictment was found, or was dead at

the time of the trial, *or if accused is charged with conspiracy with "persons unknown," and the conspiracy and the participation of accused therein are shown.* [Emphasis added.][1]

In *United States v Anderson*, 76 F3d 685 (CA 6, 1996), the defendant, Robert Anderson, was indicted with two others, Victor Anderson and Marlon Miller, for conspiracy to possess with intent to distribute cocaine and for attempting to possess with intent to distribute cocaine. The court, *id.* at 688-689, rejected the defendant's argument on appeal that his conspiracy conviction must be set aside because Victor Anderson and Marlon Miller were acquitted on that charge and there was insufficient evidence to establish a conspiracy with other unnamed conspirators:

---

[1] See also anno: *Prosecution or conviction of one conspirator as affected by disposition of case against coconspirators*, 19 ALR4th 192, § 2, pp 196-197:

A criminal conspiracy traditionally must consist of at least two persons. As a result, many courts have recognized a certain degree of logical inconsistency where differing judicial disposition is made as to various members of a group shown to have participated in a single conspiracy.

Thus, it is generally held that the acquittal of *all* persons with whom a defendant is alleged to have conspired precludes conviction of the remaining defendant. . . .

On the other hand, the conviction of a single defendant on a conspiracy charge has generally been upheld, despite the disposition of charges against all alleged coconspirators, where the disposition as to at least one was by dismissal other than on the merits, nolle prosequi, or grant of immunity, and therefore does not suggest lack of participation.

Similarly, the favorable disposition of charges against *some alleged coconspirators has been held not to vitiate the conviction of a single defendant where it is alleged and proved that there are remaining persons with whom the defendant conspired who are either unknown, unindicted, deceased, or otherwise not yet brought to trial.* [Emphasis added.]

In *United States v Williams*, 503 F2d 50 (6th Cir 1974), which defendant cites as authority, we held that "[w]here all other alleged coconspirators are acquitted, the conviction of one person for conspiracy will not be upheld." *Id.* at 54. Yet the scope of *Williams* has been limited. In *United States v Sandy*, 605 F2d 210, 216 (6th Cir [1979]), *cert denied*, 444 US 984, 100 S Ct 490, 62 L Ed 2d 412 (1979), we noted that "inconsistent jury verdicts are not fatal to a conviction . . . :"

"[W]e think that the rule in *Williams* and like cases is necessarily *confined to those circumstances In which the allegations of the indictment and the proofs at trial admit of no other conspiratorial agreement than that existing between the one convicted defendant and other conspirators, all of whom have been acquitted of the specific charge.*"

*Id.* Moreover, as defendant acknowledges, other courts have held that a defendant may be convicted of conspiracy *when the indictment refers to unnamed or unknown conspirators.* In a case presenting similar facts to those here, the Second Circuit wrote:

"We have held . . . that superficially inconsistent conspiracy determinations in the same proceedings . . . are permissible if there is evidence that the defendant conspired with 'others unknown' . . . at least so long as the indictment mentions 'others' . . . ."

*United States v Rodriguez*, 983 F2d 455, 459 (2d Cir 1993) (citations and internal quotations omitted); *see also United States v Klein*, 560 F2d 1236, 1242 (5th Cir 1977), *cert denied*, 434 US 1073, 98 S Ct 1259, 55 L Ed 2d 777 (1978). Considering the limit put on *Williams* by *Sandy*, and other Circuits' helpful analyses, *we hold that an individual's conviction for conspiracy may stand, despite acquittal of other alleged coconspirators, when the indictment refers to unknown or unnamed conspirators and there is sufficient evidence to show the existence of a conspiracy between the convicted defendant and these other conspirators.* [Emphasis added.]

In *Rodriguez, supra* at 458-459, the court noted regarding the defendant's conviction of conspiracy to possess with intent to distribute cocaine:

> The conspiracy conviction initially appears troubling in that Judge Nickerson found the evidence insufficient against Rodriguez's only indicted co-conspirator, Taveras. Under the traditional "rule of consistency," a conviction of one conspirator cannot stand if *all* co-conspirators have been acquitted in the same proceeding. *See United States v Sachs*, 801 F2d 839, 845 (6th Cir 1986). Most circuits have now departed from the rule of consistency in light of the Supreme Court's admonition in *United States v Powell*, 469 US 57, 64-65, 105 S Ct 471, 476-77, 83 L Ed 2d 461 (1984), that a jury acquittal cannot necessarily be equated with a finding that the Government failed to prove guilt beyond a reasonable doubt. Courts have been less tolerant, however, of inconsistent *judicial* determinations, since there is no ambiguity in a judge's dismissal of charges.
>
> We have held, however, that superficially inconsistent conspiracy determinations in the same proceedings, resulting from a judge's setting aside of a jury verdict against a co-conspirator, are permissible if there is evidence that the defendant "conspired with 'others unknown,'" *United States v Artuso*, 618 F.2d 192, 197 (2d Cir [1980]), *cert denied*, 449 US 861, 101 S Ct 164, 66 L Ed 2d 77 (1980), at least so long as the indictment mentions "others," *see United States v Gaviria*, 740 F2d 174, 184-85 (2d Cir 1984). In this case, the indictment charged Rodriguez, Taveras, "and others" with a narcotics conspiracy. Judge Nickerson properly charged the jury that:
>
> "In determining whether two or more persons knowingly and willfully conspired, do not consider Yesenia Maria Taveras. In other words, you must find beyond a reasonable doubt that two or more persons besides Ms. Taveras knowingly and willfully conspired.
>
> "You will recall that this count says that the conspiracy was between Ms. Rodriguez, Ms. Taveras and others. You cannot consider in determining whether there is a conspiracy Ms. Taveras."

. . . Because a rational juror could find beyond a reasonable doubt that Rodriguez had conspired with others, either in Venezuela or in the United States, to possess and import cocaine, we cannot upset the jury's verdict. [Citations omitted; emphasis added.]

We first observe that the alleged coconspirator, Gentry, was not acquitted, but was found guilty of conspiracy to possess with intent to deliver more than 225 but less than 650 grams of cocaine. To the extent that defendant's conviction of conspiracy to possess with intent to deliver more than 650 grams of cocaine includes a finding that defendant conspired to possess with intent to deliver up to 650 grams of cocaine, it is not inconsistent with the verdict with respect to Gentry and does not violate the "no one-man conspiracy" rule. In other words, the most relief defendant could be entitled to is a reduction of the conspiracy conviction to conspiracy to possess with intent to deliver more than 225 but less than 650 grams of cocaine. However, we reject defendant's claim in its entirety because of the involvement of others.

The felony information in the instant case alleged that both defendants

did unlawfully conspire, combine, confederate, and agree together with one another *and others* to Possess with Intent to Deliver 650 Grams or more of Cocaine . . . .

The trial court's jury instructions included the following:

(1) Each defendant in this case is entitled to have his guilt or innocence decided individually. You must decide whether each defendant was a member of the alleged conspiracy as if he were being tried separately. To determine

whether each defendant was a member of the alleged conspiracy, *you must decide whether each individual defendant intentionally joined with anyone else to possess with the intent to deliver 650 or more grams of the controlled substance cocaine.* [Emphasis added.]

There was testimony at trial that other individuals were involved with defendant in manufacturing cocaine. Officer Robert Miller testified that when he and other officers approached the defendant's house at 546 Nevada to effectuate a search, he observed three males in the kitchen area, sitting or standing near a kitchen table. Miller testified that as the police entered the house, two of the males ran to a back bedroom of the house and one jumped out a window. Those individuals were Reginald Williams and "a Mr. Barnes and a Mr. Summerville." The police searched the home and found items including a digital scale, small plastic bags appearing to have cocaine residue, a butter knife believed to have cocaine residue, two pagers, and correspondence addressed to a Charles Williams. There was also cocaine in the kitchen in a Pyrex measuring cup and bowl. Officer Wendy Keelty, who was also present at that search, testified that she field tested the substance on the knife and it tested positive, and that drops of suspected cocaine on the stove tested positive, as well as residue in a white paper bag and one plastic bag. Gentry's fingerprint was found on the white paper bag; the amount of cocaine seized from the premises was approximately one hundred grams.

Thus, defendant's argument that his conviction of conspiracy to possess with intent to deliver more than 650 grams of cocaine must be set aside because of the "no one-man conspiracy" rule fails because the

felony information in the instant case charged that defendant and Gentry conspired together and with *others*, and there was evidence presented from which a jury could have found beyond a reasonable doubt that defendant had conspired with others to possess with intent to deliver over 650 grams of cocaine.[2]

V

Defendant's final claim of error on appeal is that he received ineffective assistance of counsel. We disagree. To establish a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation prejudiced him so as to deprive him of a fair trial. *People v Carrick*, 220 Mich App 17, 22; 558 NW2d 242 (1996). A defendant must show that, but for the error, the result of the proceedings would have been different and that the proceedings were fundamentally unfair or unreliable. *Id.*

We presume that a defendant has received effective assistance of counsel and a heavy burden of proving otherwise rests on a defendant. *People v Plummer*, 229 Mich App 293, 308; 581 NW2d 753 (1998). Nor do we avail ourselves of the benefit of hindsight when considering a claim of ineffective assistance of counsel. *Id.* We presume that a challenged action might be

---

[2] There was sufficient evidence to conclude that defendant was involved in one large conspiracy including the cocaine at Gentry's house and his own. Defendant's house was used to process cocaine, Gentry's fingerprint was found on a bag with cocaine residue found at defendant's house, and defendant stored or obtained cocaine for delivery at Gentry's house. The jury's apparent finding that Gentry was not involved in an overall conspiracy including the cocaine at defendant's house does not invalidate the conclusion that the other, unindicted coconspirators were.

considered sound trial strategy, *id.*, that we will not second-guess. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel. *Id.*

Defendant's claim of ineffective assistance focuses on statements by trial counsel that seemingly focused on and advocated for codefendant Gentry. Defense counsel argued that codefendant Gentry was innocent of the conspiracy charge. Apparently, his strategy was to establish defendant's innocence of the charge by establishing that codefendant Gentry, the other focus of the conspiracy charge, was not involved in a conspiracy. This was legitimate trial strategy. With regard to the underlying charge, counsel advocated vigorously and effectively in his efforts to have the charges reduced and to preclude the admission of damaging evidence. Once the evidence was admitted over objection, there was little to be argued in defense. Counsel argued that defendant had not been charged with the proper offenses. Defendant has not identified a different argument or defense that counsel deprived him of by making the argument counsel made. Nor is there any reason to believe that an alternative argument would have been effective. We thus reject this claim of error.

Affirmed.