**UNITED STATES of America, Plaintiff,**

v.

**Shomori Ali WADE, Defendant.**

**No. CRIM. 01–50042.**

United States District Court, E.D. Michigan, Southern Division.

Jan. 9, 2002.

Robert W. Haviland, U.S. Attorney's Office, Flint, MI, for U.S.

Kenneth R. Sasse, Federal Defender Office, Flint, MI, for Shomori Ali Wade.

## *ORDER DENYING MOTION TO SUPPRESS EVIDENCE*

GADOLA, District Judge.

Before the Court is Defendant's Motion to Suppress Evidence [docket entry 8], filed on November 15, 2001. On December 13, 2001, the Court held an evidentiary hearing on this motion. For the reasons set forth below, the Court will deny Defendant's motion.

## I. BACKGROUND

On October 10, 2001, a federal grand jury returned a two count indictment against Defendant. Only Count II is relevant to this motion. Count I charges Defendant with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k), and Count II charges Defendant with being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1). The present motion seeks only to suppress the evidence at issue in Count II of the indictment.

Defendant moves to suppress the following evidence obtained during a search of his home on April 25, 2001: a 12 gauge shotgun, a .45 caliber pistol, various items of ammunition, and any derivative evidence, including any statements made by Defendant.

At the time of this search, Defendant was on state court probation pursuant to two orders entered on February 22, 2001 by the State of Michigan Genesee County Circuit Court. The state court had convicted Defendant of carrying a concealed weapon and possession of less than 25 grams of cocaine. Thereafter, the state court entered an "Order of Probation" in each of those cases.

The Order of Probation issued in both cases included the following terms, which are relevant to the issues in this case:

4.19. You must not use any object as a weapon. You must not own or possess *a weapon of any type or any imitation thereof.* You must not own or possess any ammunition of [sic] any firearm

components or be in the company of anyone you know to possess any of these items.

4.6. You must submit to a search of your person, motor vehicle, or residence for controlled substances, firearms, or stolen property without need of a warrant if the Field Agent has *reasonable cause* to believe those items will be found.

4.7. You must allow your Field Agent into your residence anytime for probation supervision.

(Order of Probation, State of Michigan Genesee County Circuit Court, Case Nos. 00–07200 & 00–07240) (emphasis added).

On April 25, 2001, Defendant's probation officer, Anthony Ford, conducted an unannounced home visit at Defendant's residence, 1510 Oak Street, Apartment 2, Flint, Michigan. Two Bureau of Alcohol, Tobacco and Firearms ("ATF") agents and three Flint Police officers accompanied Probation Officer Ford. Ford advised Defendant that the purpose of the visit was to verify that Defendant was complying with the terms of his probation. Ford then asked whether he could "walk through" Defendant's residence, and Defendant gave him permission to do so. Two of the Flint Police Officers accompanied Ford on the "walk through" search of Defendant's residence.

One of the Flint Police officers observed what Probation Officer Ford later described as a "pellet rifle"[1] in plain view in Defendant's bedroom. Probation Officer Ford seized the pellet rifle and then informed Defendant that he was under arrest for violating the terms of his probation. One of the Flint Police Officers handcuffed Defendant after Ford informed Defendant that he was under arrest. Defendant had been sitting on a living room couch during the walk through search. When Defendant stood up to be handcuffed by the police officer, an officer searched the cushions of the couch and found a live .45 caliber bullet. The officers proceeded to search Defendant's residence more thoroughly. Upon questioning, Defendant informed the officers of the location of a .45 caliber pistol, which the officers located.

According to the ATF Report, the officers seized the following items from Defendant's residence: a 12 gauge shotgun located in the kitchen behind the refrigerator, a .45 caliber pistol located underneath the kitchen sink which was loaded with 8 rounds in the magazine and 1 round in the chamber, a box containing 41 rounds of .45 caliber ammunition on a kitchen shelf, and a box containing 14 rounds of 12 gauge shotgun ammunition on a bathroom shelf. (Def. Ex. 2, ATF Report of Investigation, ¶ 3).

As noted above, Defendant now seeks to suppress the 12 gauge shotgun, the .45 caliber pistol, the various items of ammunition, and any derivative evidence obtained during the search, including any statements made by Defendant.

## II. LEGAL STANDARD

The Fourth Amendment to the Constitution guarantees the "right of the people to be secure in their persons, hous-

---

**1.** Defendant refers to the rifle in question as a "BB gun," while the Government in its briefs refers to the rifle as a "Crossman Air Rifle." As discussed in this opinion, Defendant conceded that this rifle is a "weapon" or at least an "imitation thereof" within the meaning of the Order of Probation. Therefore, the Court need not resolve which name most properly describes this weapon. For the purpose of identification in this opinion, the Court will refer to this weapon as a "pellet rifle," the term used by Probation Officer Ford at the evidentiary hearing.

es, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A defendant seeking to challenge a search or seizure pursuant to the Fourth Amendment must first establish that he has standing to challenge the search or seizure. *See United States v. Hartwell*, 67 F.Supp.2d 784, 793 (E.D.Mich.1999) (Gadola, J.). Specifically, he must show that (1) he manifested a subjective expectation of privacy in the object of the challenged search and (2) society is prepared to recognize that expectation as legitimate. *Id.* (citations omitted). Once the defendant has established standing in a case in which the search was not conducted pursuant to a validly issued warrant, the burden shifts to the Government.

■ In general, the search of an individual's home requires a warrant supported by probable cause. *See, e.g., Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, the Supreme Court has held that "[a] State's operation of a probation system ... presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin v. Wisconsin*, 483 U.S. 868, 873–74, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Therefore, a state may authorize the search of a probationer's home on less than probable cause.

## III. ANALYSIS

As an initial matter, the Court notes that the following issues are not in dispute. First, the Government does not dispute that Defendant has standing to challenge the search, as the search occurred in Defendant's own home. *See United States v. Jones*, 147 F.Supp.2d 752, 759 (E.D.Mich. 2001). Second, the parties do not dispute that Defendant consented to the initial "walk through" search which uncovered

the pellet rifle. The Government does not contend that Defendant's consent extended beyond the scope of the "walk through" search. *See United States v. Grant*, 112 F.3d 239, 242 (6th Cir.1997) (noting that "the scope of the consent given determines the permissible scope of the search"). Third, Defendant conceded at the evidentiary hearing that the pellet rifle which Probation Officer Ford seized in Defendant's home was a "weapon," or at least an "imitation thereof" within the meaning of Section 4.19 of the Order of Probation.

■ In this case, Section 4.6 of the Order of Probation states that the probationer must submit to a search of his residence when the probation officer has "reasonable cause" to believe that items such as firearms will be found. The meaning of "reasonable cause" as set forth in the Order of Probation is subject to a state court's interpretation. *See Griffin*, 483 U.S. at 875–76, 107 S.Ct. 3164; *United States v. Payne*, 181 F.3d 781, 786 (6th Cir.1999).

■ Under Michigan law, the Government can satisfy the "reasonable cause" standard of the Order of Probation if the Government's search was based on reasonable suspicion supported by articulable facts. *See United States v. Carnes*, 987 F.Supp. 551, 556, 558–59 (E.D.Mich.1997) (concluding "that administrative/regulatory searches in the parole/probation context need only, as a matter of Michigan law, be based on reasonable suspicion supported by articulable facts"); *People v. Woods*, 211 Mich.App. 314, 535 N.W.2d 259, 261–62 (1995) (applying the Fourth Amendment "reasonable suspicion" standard to a warrantless administrative search conducted pursuant to Department of Corrections regulations). "Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particu-

lar person ... of criminal activity.'" *United States v. Payne*, 181 F.3d 781, 788 (6th Cir.1999) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

In this case, the issue is whether Probation Officer Ford had "reasonable cause" to search Defendant's residence. Defendant asserts that finding the pellet rifle did not constitute "reasonable cause to believe" that firearms would also be present in Defendant's residence. (Def. Br. at 4). Defendant also argues that "[t]he probation officer's apparent belief that he had authority to search if he uncovered a violation of probation is not supported by the regulations." (Def. Br. at 3–4). Defendant does not, however, cite to any regulations to support this argument. At the evidentiary hearing, Defendant argued that the Probation Officer, and possibly not even a law enforcement officer, was authorized to arrest Defendant for a technical probation violation. At the evidentiary hearing, the Court ordered the parties to file supplemental briefs on this issue. The Government filed a timely supplemental brief, but Defendant did not submit a brief.

The Government contends that the discovery of the pellet rifle justified Defendant's arrest for a violation of Section 4.19 of the Order of Probation, which states in part, "You must not own or possess a weapon of any type or any imitation thereof." The Government contends that because the arrest was justified, the officers were also justified in searching the immediate area where Defendant was sitting. *See Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Government asserts that considering Defendant's prior record, the discovery of the live .45 caliber bullet in the couch, coupled with the discovery of the pellet rifle, provided Probation Officer Ford with at least "reasonable cause" to search the residence more thoroughly for the presence of firearms.

As noted above, Defendant conceded at the evidentiary hearing that the pellet rifle was a "weapon," or at least an "imitation thereof" within the meaning of Section 4.19 of the Order of Probation. Further, Defendant does not dispute that the pellet rifle belonged to him. Insofar as Defendant was in possession of a weapon or an imitation thereof, the Court finds that Defendant was in violation of the Order of Probation on April 25, 2001 when Probation Officer Ford seized the pellet rifle in Defendant's residence.

The Court also finds that Probation Officer Ford validly arrested Defendant. Under Michigan law, "A peace officer, without a warrant, may arrest a person ... [when] [t]he peace officer has reasonable cause to believe the person ... has violated a condition of probation imposed by a court ...." Mich. Comp. Laws § 764.15(1)(g). While the term "peace officer" is not expressly defined in the Michigan Code of Criminal Procedure, the Court looks to other sections of the Michigan Compiled Laws and Michigan case law for guidance. *See* Mich. Comp. Laws § 330.1100c(1) (defining "peace officer" as "an officer of the department of state police or of a law enforcement agency of a county, township, city, or village who is responsible for the prevention and detection of crime and enforcement of the criminal laws of this state"); *Michigan State Employees Association v. Attorney General*, 197 Mich. App. 528, 496 N.W.2d 370, 372 (1992) (noting that the Michigan Supreme Court has defined "peace officers" as including "sheriffs and their deputies, constables, marshals, members of the police force of cities, and other officers whose duty is to

enforce and preserve the public peace") (citations omitted).

■ At the evidentiary hearing, Probation Officer Ford testified that he is a Deputy Sheriff of Genesee County and that in this capacity he is authorized to make arrests in Genesee County. Clearly, Probation Officer Ford and the Flint Police officers who assisted with the arrest are "peace officers" within the meaning of the statute. The Court also concludes that Probation Officer Ford's discovery of the pellet rifle provided him with "reasonable cause" to believe that Defendant had violated a condition of the Order of Probation. Ford testified at the evidentiary hearing that he believed that the pellet rifle was a "weapon" or at least an "imitation thereof" within the meaning of Section 4.19 of the Order of Probation. Therefore, Probation Officer Ford was justified in arresting Defendant for violating a condition of the Order of Probation.

■ Because the arrest of Defendant was valid, the officers were also justified in searching the immediate area where Defendant was sitting. *See Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). This search uncovered a live .45 caliber bullet. The Court also notes that because the arrest and subsequent search were valid, Defendant has no grounds on which to seek suppression of his statement indicating the location of the .45 caliber pistol. Defendant was on probation for carrying a concealed weapon, and this fact, coupled with the discovery of the pellet rifle and the live .45 caliber bullet, provided Probation Officer Ford with reasonable cause to believe— "articulable reasons and a particularized and objective basis for suspecting"—that firearms were present in Defendant's residence. *See United States v. Payne*, 181 F.3d 781, 788 (6th Cir.1999) (internal quotation and citation omitted). Therefore,

Probation Officer Ford was authorized within the meaning of Section 4.6 of the Order of Probation to conduct a warrantless search of Defendant's residence for firearms. For the reasons stated above, the Court will deny Defendant's Motion to Suppress Evidence.

## IV. CONCLUSION

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence [Docket Entry 8] is **DENIED**.

**IT IS FURTHER ORDERED** that, pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(F), the delay resulting from the filing of Defendant's motion shall be excluded for purposes of computing the time within which trial of this case must commence.

**SO ORDERED**.